764 P.2d 101

**Spring LOCEY and Dawn Locey, By and Through Their Conservator and Guardian, Bob LOCEY, Plaintiffs–Appellants,**

v.

**FARMERS INSURANCE COMPANY OF IDAHO, Defendant–Respondent.**

**No. 17000.**

Court of Appeals of Idaho.

Oct. 18, 1988.

Rehearing Denied Nov. 30, 1988.

Petition for Review Denied Dec. 20, 1988.

R. Brad Masingill, Weiser, for plaintiffs-appellants.

William G. Dryden and Robert M. Tyler, Jr. (argued), Boise, for defendant-respondent.

WALTERS, Chief Judge.

Spring and Dawn Locey were injured while riding in an automobile owned by their father. The driver of the auto, a friend of their father, was not insured. Farmers Insurance Company of Idaho, the insurer of the auto, denied the Loceys' claim for either liability or uninsured motorist coverage. The Loceys brought this action. On stipulated facts, both parties moved for summary judgment. The district court granted summary judgment to Farmers. The Loceys' appeal presents the question whether a definition in the Farmers' policy, excluding the insured vehicle from being an uninsured motor vehicle for purposes of uninsured motorist coverage, is void as contrary to Idaho's uninsured motorist statute or public policy. We hold that it is not and, accordingly, affirm the district court's judgment.

The following background is derived from the parties' "stipulation of facts for summary judgment." On March 23, 1984, a friend of Bob Locey was driving Bob Locey's Subaru automobile. Bob's daughters, Spring and Dawn Locey, were among the passengers in the automobile. The

driver was not personally insured. A one-car accident resulted from the driver's negligence. Spring, Dawn, and other passengers were seriously injured.

Both the Subaru and another vehicle, a Chevrolet truck owned by Bob Locey, were insured by Farmers Insurance Company of Idaho. Farmers denied liability coverage to Spring and Dawn pursuant to a "household" exclusion. Having failed to recover under the liability provisions of the policy, Spring and Dawn submitted a claim under the uninsured motorist coverage of the Subaru policy. Farmers also denied that claim, citing a definition in the policy excluding the "described automobile" (the Subaru) while being used by the insured or a permittee from being an "uninsured motor vehicle." Farmers apparently referred to an exclusion for "other vehicles owned by the insured" in denying coverage asserted by the Loceys under the Chevrolet policy.

Spring and Dawn filed this action in district court. The parties stipulated to the above facts and filed cross-motions for summary judgment. The Loceys did not dispute Farmers' decision to deny liability coverage. Instead, the Loceys pursued their uninsured motorist coverage claim and they sought to "stack" all of their Farmers Insurance uninsured motorist coverages. The district court concluded that the policy exclusions were unambiguous and not contrary to the public policy reflected by Idaho's uninsured motorist statute, I.C. § 41–2502. Therefore, the court held no recovery could be had under the uninsured motorist coverage of either the Subaru or Chevrolet policies. Relying on *Hansen v. State Farm Mut. Auto. Ins. Co.*, 112 Idaho 663, 735 P.2d 974 (1987), the court also determined that the anti-stacking clauses in the policies would likewise bar any cumulative recovery. Accordingly, the court granted Farmers' motion to dismiss the complaint. The Loceys appeal from that decision.

A motion for summary judgment is governed by I.R.C.P. 56(c). Summary judgment is appropriate where there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. *Id.* Where the facts are stipulated by the parties, the trial court's task is to determine which party should prevail as a matter of law. *See, e.g., Noyes v. Noyes*, 106 Idaho 352, 679 P.2d 152 (Ct. App.1984). When reviewing such a determination, we exercise free review. *Standards of Appellate Review*, IDAHO APPELLATE HANDBOOK § 3.3.6.2 (Idaho Law Foundation 1985).

On appeal, Spring and Dawn assert that the court erred by concluding that Farmers was not liable under the uninsured motorist provisions of their father's policies. They contend that the exclusion for accidents caused by operators of the respective vehicles insured by each insurance contract is contrary to public policy and does not conform to the applicable Idaho statute. In response, Farmers calls our attention to Idaho Supreme Court decisions holding that uninsured motorist coverage may be limited by policy terms. Each party seeks attorney fees on appeal.

We begin by reviewing the unique posture of this case as it comes before us. As mentioned above, this action arose out of an automobile accident on March 23, 1984. The vehicle owner's policy excluded liability coverage for injuries suffered by members of the insured's household such as Spring and Dawn. Prior to December 31, 1984, Farmers had denied the Loceys' liability coverage claim and had instead paid other passengers to the full extent of the liability limits of the policy. A claim under the uninsured motorist provision was submitted by the Loceys on April 30, 1985. That claim was denied on July 2, 1985. This action was filed on November 12, 1985.

On November 26, 1985, the Idaho Supreme Court held that such household liability exclusion clauses violate Idaho's compulsory liability insurance law, I.C. § 49–233, and are therefore void—but that liability recovery is limited to the extent of the policy. *Farmers Insurance Group v. Reed*, 109 Idaho 849, 712 P.2d 550 (1985). The Court announced that *Reed* would be prospective in effect, applying to that action, to all actions pending as of December

31, 1984, and to all actions arising subsequent to that date. *Id.* Having understandably failed to anticipate the Supreme Court's holding in *Reed* and having seen the full limits of the liability coverage already paid out to others, the Loceys now seek the only relief still available—under the uninsured motorist coverage of their policy. Farmers contends that recovery is barred under an express provision of the policy.

An insurer must use clear and precise language if it wishes to restrict the scope of its coverage. *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 701 P.2d 217 (1985); *Moss v. Mid–America Fire and Marine Ins. Co.*, 103 Idaho 298, 647 P.2d 754 (1982). On appeal, the Loceys do not contend that the terms of this policy are ambiguous. They assert only that the policy's exclusion of "the insured vehicle" from uninsured motorist coverage contravenes public policy and Idaho's uninsured motorist statute,[1] I.C. § 41–2502.[2] Although apparently a question of first impression in Idaho, the courts of many other states have addressed this issue.

Irvin Schermer's treatise, *Automobile Liability Insurance*, summarizes as follows:

> The most common situation in which the "insured automobile" exclusion is proffered as a defense to UM [uninsured motorist] coverage under the policy covering the occupied vehicle is that in which the household exclusion renders the liability coverage of the accident vehicle's policy inapplicable to injuries sustained by the named insured or resident relatives. A majority of the courts have held that, absent a statutory prohibition, the exclusion of the insured motor vehicle from classification as an uninsured motor vehicle does not create an invalid restriction on UM coverage. A substantial minority, contrarily, has held that the absence of an express authorization for its use, such a definition, since it restricts coverage in a manner inconsistent with the purposes of the legislation, is invalid.
>
> It has also been raised with conflicting results as a defense to uninsured motorist claims where cooperation and notice of accident provisions have been breached and where co-employee and underaged driver exclusions apply. It has likewise been asserted defensively, and with conflicting results, as to *underinsured* motorist claims under liability policies applicable to a host's vehicle. It has been held inapplicable to passenger-host situations where the claim is addressed to the passenger's own UM coverage.
>
> The exclusionary definition does not prevent coverage for the insured where his injuries result from the operation of the insured's vehicle without his consent.

2 I. SCHERMER, AUTOMOBILE LIABILITY INSURANCE § 29.10 (2d ed. 1981, rev. 1984) (footnotes omitted).

1. The exclusion of the insured vehicle from the definition of an uninsured vehicle is to be distinguished from the exclusion of other vehicles owned by the insured as addressed in *Dullenty v. Rocky Mountain Fire & Cas. Co.*, 111 Idaho 98, 721 P.2d 198 (1986). The latter exclusion arguably has significantly different purposes. *See* Annotation, *Uninsured motorist coverage: validity of exclusion of injuries sustained by insured while occupying "owned" vehicle not insured by policy*, 30 A.L.R.4th 172 (1984).

2. I.C. § 41–2502 provides:

*Uninsured motorist coverage for automobile insurance.*—No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any natural person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death as set forth in section 49–1505, Idaho Code, as amended from time to time, under provisions approved by the director of the department of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; provided, however, that the named insured shall have the right to reject such coverage, which rejection must be in writing; and provided further, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

Our research indicates that, for a variety of reasons, a majority of states permit such an exclusion. *See Ex Parte O'Hare*, 432 So.2d 1300 (Ala.1983); *State Farm Mut. Auto. Ins. Co. v. Gibbs*, 139 Ariz. 274, 678 P.2d 459 (1983) (but *cf. Darner Motor Sales v. Universal Underwriters*, 140 Ariz. 383, 682 P.2d 388, 396 n. 6 (1984)); *Reid v. State Farm Fire and Casualty Co.*, 352 So.2d 1172 (Fla.1977) (but *cf. Jernigan v. Progressive America Ins. Co.*, 501 So.2d 748 (Fla.Dist.Ct.App.) (distinguishing *Reid*), *rev. denied*, 513 So.2d 1062 (Fla. 1987)); *Barras v. State Farm Mutual Automobile Ins. Co.*, 118 Ga.App. 348, 163 S.E.2d 759 (1968); *Hilyard v. Estate of Clearwater*, 240 Kan. 362, 729 P.2d 1195 (1986); *Smith v. Allstate Ins. Co.*, 483 A.2d 344 (Me.1984); *Turcotte v. Foremost Ins. Co.*, 460 A.2d 1369 (Me.1983); *Frye v. Frye*, 305 Md. 542, 505 A.2d 826 (1986); *Harrison v. MFA Mut. Ins. Co.*, 607 S.W. 2d 137 (Mo.1980); *Willey v. Farmers Insurance Group*, 86 N.M. 325, 523 P.2d 1351 (1974); *Dairyland Insurance Company v. Finch*, 32 Ohio St.3d 360, 513 N.E.2d 1324 (1987); *Parsons v. State Farm Mut. Auto. Ins. Co.*, 335 Pa.Super. 394, 484 A.2d 192 (1984); *Jeffers v. Stanley*, 486 S.W.2d 737 (Tenn.1972); *Kay v. Kay*, 30 Utah 2d 94, 513 P.2d 1372 (1973) (overruled as to liability-related household exclusion, *Farmers Ins. Exchange v. Call*, 712 P.2d 231 (Utah 1985)). *See also Davis v. Bean*, 804 F.2d 1018 (8th Cir.1986) (applying Arkansas law).

However, even in the face of this flood of decisions, a few states have reached the opposite conclusion. The seminal opinion in this area was *Bowsher v. State Farm Fire and Casualty Company*, 244 Or. 549, 419 P.2d 606 (Or.1966). There, the court stated:

> [T]he legislative intent in requiring certain insurance policies to provide protection for policy-holders injured by operators of "uninsured motor vehicles" should be liberally construed to the end that persons injured by uninsured motorists be protected to the limits of such policies to the same extent that they would have been protected if the tort-feasors had carried insurance.

*Id.* 419 P.2d at 607. The court focused specifically on the lack of liability insurance resulting from a policyholder exclusion. The court found nothing in Oregon's uninsured motorist statute to suggest an intent to treat a policyholder any differently when riding in his own automobile than when he is injured while riding in another's vehicle. Therefore, the Oregon Court held that, as to Bowsher, his own automobile while operated by an uninsured driver was an "uninsured motor vehicle." *Id.* Although the Oregon legislature amended its statute in the following year to expressly provide for such an exclusion, *see State Farm Mut. Auto. Ins. Co. v. Whitlock*, 59 Or.App. 303, 650 P.2d 1042 (1982), other states have followed the trail blazed by the Oregon court.

The Supreme Courts of Illinois and Iowa each broadly construed their uninsured motorist statutes to forbid this type of exclusive definition of an uninsured vehicle. *See Barnes v. Powell*, 49 Ill.2d 449, 275 N.E.2d 377 (1971), and *Rodman v. State Farm Mut. Auto. Ins. Co.*, 208 N.W.2d 903 (Iowa 1973). On the heels of *Bowsher*, both courts concluded that their respective statutes were intended to require uninsured motorist coverage which protected the insured to the same extent as if the tortfeasor had carried statutory minimum liability coverage. *Id.* Recently, four other states have followed suit.[3] *See State Farm Mut. Auto. Ins. Co. v. Nester*, 459 So.2d 787 (Miss.1984) (reversing *Aitken v. State Farm Mut. Auto. Ins. Co.*, 404 So.2d 1040 (Miss.1981)); *State Farm Mutual Auto. Ins. Co. v. Wendt*, 708 P.2d 581 (Okla.1985) (as anticipated in *Markham v. State Farm Mut. Auto. Ins. Co.*, 326 F.Supp. 39 (W.D.Okla.1971), *reversed on*

---

3. The Loceys have also attached a district court memorandum opinion, *McDade v. Farmers Insurance Co. of Idaho*, No. 33473, (Idaho Fifth Dist.Ct. September 29, 1981), where District Judge Meehl followed the reasoning of *Bowsher* and held that the same exclusion as is under attack here was contrary to I.C. § 41–2502 and was therefore void. Although we give that opinion the respect due a considered decision of a member of the Idaho trial bench, we of course are not bound by it.

*other grounds*, 464 F.2d 703 (10th Cir. 1972)); *Faraj v. Allstate In. Co.*, 486 A.2d 582 (R.I.1984); *First National Insurance Company of America v. Perala*, 32 Wash. App. 527, 648 P.2d 472, *rev. denied*, 98 Wash.2d 1002 (1982).[4]

However, although we look to the decisions of other state courts for guidance, we must reach our own decision by applying Idaho's uninsured motorist statute in light of prior Idaho decisions interpreting that statute. *Dullenty v. Rocky Mountain Fire & Cas. Co.*, 111 Idaho 98, 721 P.2d 198 (1986). We do not write on a blank slate. Our Supreme Court has had occasion to construe section 41–2502 in several recent cases: *Dullenty v. Rocky Mountain Fire & Cas. Co.*, supra; *Hammon v. Farmers Ins. Co.*, 109 Idaho 286, 707 P.2d 397 (1985); *Miller v. Farmers Ins. Co.*, 108 Idaho 896, 702 P.2d 1356 (1985); *Meckert v. Transamerica Ins. Co.*, 108 Idaho 597, 701 P.2d 217 (1985); and *Blackburn v. State Farm Mutual Auto. Ins. Co.*, 108 Idaho 85, 697 P.2d 425 (1985). Of those cases, the *Dullenty* decision provides the most assistance to us.

In *Dullenty*, the Court directly confronted the public policy represented by I.C. § 41–2502. Addressing an "other owned vehicle" exclusion which purported to eliminate uninsured motorist coverage when the insured occupied another of his vehicles, the Court stated:

> [In *Hammon v. Farmers Insurance Group*, 107 Idaho 770, 692 P.2d 1202 (1985), *vacated, supra*], [t]he Court of Appeals ... held that uninsured motorist cove. ge "reciprocates" liability coverage and hence "by a parity of reasoning" uninsured motorist coverage is statutorily mandated to also afford coverage to an insured whenever and wherever the insured is injured by an uninsured vehicle. We disagree.
>
> We deem the legislative intent in the field of automobile insurance to be relatively clear. It is the public policy of this state that any owner or operator of a motor vehicle, with certain self-insured exceptions, purchase automobile *liability* insurance. Therein it is contemplated that if a third party suffers damage by reason of the operation of that specific motor vehicle, the owner or operator of the vehicle is insured against loss by reason of a recovery by the injured third party. While obviously such a scheme contemplates insurance against a risk of such monetary loss on the part of the owner or operator of the insured vehicle, it carries out a further public policy of providing some protection to the general public who may be injured as a result of the operation of the named motor vehicle, by providing an assured fund from which a member of the general public may recover for at least part of his damage.
>
> Further provisions of the statutory scheme provide that when a potential insured contemplates purchasing *liability* insurance from a carrier, that the carrier must *offer* the potential insured as an addition to or supplement to the liability policy on the specific motor vehicle, uninsured motorist coverage, *i.e.*, insurance against the risk of damage to the insured caused by a third party uninsured tortfeasor.

*Id.* 111 Idaho at 102, 721 P.2d at 202 (emphasis original).

Of particular interest in resolving the instant question is the Court's subsequent statement.

> Although the Court of Appeals held otherwise, we find nothing in the legislative language that mandates that when a carrier offers uninsured motorist coverage to a potential insured, that it must do so in language which covers the insured in *all circumstances* wherein the insured suffers damage at the hands of an uninsured motorist, or that policy language which attempts to limit the coverage to

---

**4.** Broad, all-encompassing language condemning other exclusions from uninsured motorist coverage suggests that the courts of at least three other states are likely to reach the same conclusion. *See Roach v. Central National In-surance Company of Omaha*, 60 Mich.App. 40, 230 N.W.2d 297 (1975); *Petrich by Lee v. Hartford Fire Ins. Co.*, 414 N.W.2d 558 (1987); *Guiberson v. Hartford Cas. Ins. Co.*, 704 P.2d 68 (Mont.1985).

*less than all circumstances* is void as against legislative public policy.

*Id.* at 103, 721 P.2d at 203 (emphasis original). The Court examined the possible reasons for an insurance company to exclude "other-owned vehicle" coverage and held that the statute does not require an insurance carrier to extend uninsured motorist coverage to an insured when occupying another of his vehicles which is not insured under that carrier's liability policy.

The Loceys invite our attention to the title of the relevant statute and suggest that the legislature's use of the term "uninsured motorist" conveys an intent to protect insureds from uninsured *motorists,* such as the driver in this case. The body of the statute requires an offer of coverage "for the protection of persons insured [under the liability policy] who are legally entitled to recover damages from owners or operators of *uninsured motor vehicles....*" [Emphasis added.] Here, the operator, not the vehicle, was uninsured. Our Supreme Court has announced that uninsured motorist coverage may be limited by the policy. The policy unambiguously specified that the vehicle insured under the policy could not also be an uninsured vehicle for purpose of uninsured motorist coverage. While the Loceys' argument and the *Bowsher* line of authority has merit, our review of *Dullenty* and of the statute leads us to the inescapable conclusion that a clause in the insurance contract removing the insured vehicle from the class of uninsured vehicles does not contravene public policy or I.C. § 41–2502.

As the decision in *Reed* exemplifies, our Supreme Court gives a more expansive reading to Idaho's mandatory liability insurance statute than to the offer-requiring uninsured motorist statute. *See, e.g., Dullenty v. Rocky Mountain Fire & Cas. Co., supra; Hammon v. Farmers Ins. Co. of Idaho, supra,* (I.C. § 41–2502 does not mandate *unidentified* motor vehicle coverage); *Blackburn v. State Farm Mut. Auto. Ins. Co., supra,* (I.C. § 41–2502 does not require *underinsured* motor vehicle coverage). Unfortunately, the Loceys failed to discover that the liability-coverage front door was not locked, before trying

the uninsured-motorist back door. Finding ourselves constrained by the construction given the statute by our Supreme Court, we cannot unlock the back door. We hold that the insurance policy definition excluding the insured vehicle from being an uninsured vehicle is valid and bars recovery by the Loceys.

■ The Loceys' contention that the Chevrolet policy provides coverage is also unavailing. The policy contained an "other owned vehicle" exclusion very similar to that held to be valid in *Dullenty.* Additionally, to have the benefit of any uninsured motorist coverage, Spring and Dawn would have had to been "occupants" of the insured Chevrolet, according to the policy. Thus, the Loceys' alternative claim under that policy is without merit.

The decision of the district court is affirmed. No attorney fees awarded. Costs to respondents, Farmers Insurance Company of Idaho.

SWANSTROM, J., concurs.

BURNETT, Judge, dissenting.

Reduced to its essence, the majority opinion holds that persons injured in an automobile accident are not entitled to uninsured motorist benefits even though the accident was caused by an uninsured motorist and there is no liability coverage available under an insurance policy on the automobile involved. I dissent.

This case provides an unfortunate example of a "Catch–22." Two girls, Spring and Dawn Locey, were seriously injured in March, 1984, as a result of negligence by an uninsured motorist who was driving a car owned by the girls' father. When the girls applied for liability benefits under their father's automobile insurance policy, the insurance company said "no." The company pointed to a "household" exclusion in the policy and told the girls there was no liability coverage applicable to them. When the girls applied for uninsured motorist benefits, the company again said "no." This time the company pointed to the existence of the insurance policy and

told the girls that uninsured motorist benefits were barred with respect to any "insured vehicle." To quote a line from Joseph Heller's novel, "That is some Catch–22!"

The irony is deepened by the fact that household exclusions later were held invalid by our Supreme Court in *Farmers Insurance Group v. Reed,* 109 Idaho 849, 712 P.2d 550 (1985). The Supreme Court gave *Reed* a limited measure of retroactivity, making it applicable to "all actions pending" on December 31, 1984, and to "all actions arising" after that date. *Id.* at 854, 712 P.2d at 555. The Loceys' claim arose before December 31, 1984, and suit was filed after that date. Consequently, through no apparent fault of the Loceys or their counsel, the girls' claim "fell through the cracks" of *Reed*'s limited retroactivity scheme. The girls received no liability benefits, and they received no uninsured motorist benefits even though the driver was uninsured and the vehicle was uninsured as to them.

The tone of the majority opinion is sympathetic to the Locey girls' plight. However, my colleagues deem themselves constrained to reach an unjust result for two reasons. First, they suggest that the outcome is consistent with a "majority" of cases decided in other jurisdictions. Second, they contend that the outcome is dictated by broad language employed by our Supreme Court in *Dullenty v. Rocky Mountain Fire & Casualty Co.,* 111 Idaho 98, 721 P.2d 198 (1986). I respectfully disagree on both points.

The courts of other jurisdictions have been sharply divided on the validity of insurance policy provisions which exclude uninsured motorist benefits in cases like this one. My colleagues say that such exclusions have been upheld in decisions cited from fifteen states and have been struck down in decisions from only seven states. *Ante* at pp. 104–105. I submit that the balance of cases is not so one-sided. The proper focus is on decisions in states that have (or had, when the decisions were rendered) statutes neither specifically providing nor specifically excluding uninsured motorist benefits in this type of case. Among these decisions, I would classify eleven as excluding benefits,[1] eight as protecting benefits,[2] and three more as clearly indicating that benefits would be protected if that question were presented.[3] Moreover, in one of the eleven states where benefits have been excluded, subsequent decisions have cast doubt upon the outcome.[4] In five more of the same eleven states, the courts that excluded uninsured

1. See *Davis v. Bean,* 804 F.2d 1018 (8th Cir.1986) (applying Arkansas law); *Ex parte O'Hare,* 432 So.2d 1300 (Ala.1983); *Reid v. State Farm Fire & Casualty Co.,* 352 So.2d 1172 (Fla.1977); *Hilyard v. Estate of Clearwater,* 240 Kan. 362, 729 P.2d 1195 (1986); *Smith v. Allstate Insurance Co.,* 483 A.2d 344 (Me.1984); *Harrison v. MFA Mutual Insurance Co.,* 607 S.W.2d 137 (Mo.1980) (en banc); *Willey v. Farmers Insurance Group,* 86 N.M. 325, 523 P.2d 1351 (1974); *Dairyland Insurance Co. v. Finch,* 32 Ohio St.3d 360, 513 N.E.2d 1324 (1987); *Parsons v. State Farm Mutual Automobile Insurance Co.,* 335 Pa.Super. 394, 484 A.2d 192 (1984); *Holt v. State Farm Mutual Automobile Insurance Co.,* 486 S.W.2d 734 (Tenn.1972) (later superseded by contrary statute); and *Kay v. Kay,* 30 Utah 2d 94, 513 P.2d 1372 (1973), *overruled on other grounds, Farmers Insurance Exchange v. Call,* 712 P.2d 231 (Utah 1985).

2. See *Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.,* 140 Ariz. 383, 682 P.2d 388 (1984) (disapproving *State Farm Mutual Automobile Insurance Co. v. Gibbs,* 139 Ariz. 274, 678 P.2d 459 (Ct.App.1984)); *Barnes v.*

*Powell,* 49 Ill.2d 449, 275 N.E.2d 377 (1971); *Rodman v. State Farm Mutual Automobile Insurance Co.,* 208 N.W.2d 903 (Iowa 1973); *State Farm Mutual Automobile Insurance Co. v. Nester,* 459 So.2d 787 (Miss.1984); *State Farm Mutual Automobile Insurance Co. v. Wendt,* 708 P.2d 581 (Okla.1985); *Bowsher v. State Farm Fire & Casualty Co.,* 244 Or. 549, 419 P.2d 606 (1966) (later superseded by contrary statute); *Faraj v. Allstate Insurance Co.,* 486 A.2d 582 (R.I.1984); and *First National Insurance Co. of America v. Perala,* 32 Wash.App. 527, 648 P.2d 472 (1982).

3. See *Roach v. Central National Insurance Co. of Omaha,* 60 Mich.App. 40, 230 N.W.2d 297 (1975); *Guiberson v. Hartford Casualty Insurance Co.,* 704 P.2d 68 (Mont.1985); and *Niemann v. Badger Mutual Insurance Co.,* 143 Wis.2d 73, 420 N.W.2d 378 (Ct.App.1988).

4. In Florida, the *Reid* decision, fully cited at n. 1, *supra,* has been undercut by *Jernigan v. Progressive American Insurance Co.,* 501 So.2d 748 (Fla.Dist.Ct.App.1987), *citing Allstate Insurance Co. v. Boynton,* 486 So.2d 552 (Fla.1986).

motorist benefits also upheld "household" exclusions from liability coverage.[5] In each case, the denial of uninsured motorist benefits prevented an "end run" around the household exclusion. However, such cases are of dubious value today in Idaho, where "household" exclusions have been condemned as violative of public policy. Viewing the full range of case law on this subject, I conclude that my colleagues' decision in this case is not supported by a well-defined "majority" of decisions elsewhere.

The second rationale for today's decision is that denial of uninsured motorist benefits is mandated by our Supreme Court's decision in the *Dullenty* case. However, the issue in *Dullenty* had nothing to do with a "household" exclusion or an "insured vehicle" exclusion. Rather, it dealt with a contractual prohibition against "stacking" of uninsured motorist coverages which had been purchased on several vehicles. In upholding that prohibition, the Supreme Court delivered a broad dictum, quoted *ante* at p. 105, to the effect that Idaho's uninsured motorist law allows insurance companies to offer coverage which extends to "less than all circumstances." But that language does not squarely address the issue here. Uninsured motorist benefits have not been denied in this case because of "circumstances" related to the accident which gave rise to the claim. Rather, and more precisely, benefits have been denied because the insurance policy treats a vehicle as "insured" when in fact all liability coverage is barred as to the pertinent class of claimants. I do not believe such an anomaly in an insurance policy is what the *Dullenty* court had in mind when it said that uninsured motorist coverage may extend to "less than all the circumstances."

Moreover, I respectfully question whether the *Dullenty* dictum was truly intended to give sweeping approval to all contractual limitations upon uninsured motorist benefits. The author of *Dullenty*, Chief Justice Shepard, later dissented when the Supreme Court upheld "anti-stacking" provisions in the uninsured motorist sections of three policies issued by a single insurer. *See Hansen v. State Farm Mutual Automobile Insurance Co.*, 112 Idaho 663, 672, 735 P.2d 974, 983 (1987) (majority opinion by Justice Bakes, joined by Justice Donaldson and Justice McFadden, pro tem). Chief Justice Shepard noted that *Hansen* was factually distinguishable from *Dullenty* because the "anti-stacking" clause in *Dullenty* had been applied to coverages under policies issued by two different insurers. The Chief Justice argued that this distinction cast a different light upon the risk an insurance company fairly could be expected to underwrite. The Chief Justice, joined in his dissent by Justice Huntley, would have refused to enforce the "anti-stacking" provision in *Hansen.*

The point germane here is that if the *Dullenty* dictum had been intended as a blanket endorsement of contractual restrictions upon uninsured motorist benefits, any factual distinction between *Hansen* and *Dullenty* as to underwriting risks would have been irrelevant to the outcome of the "stacking" issue. The Chief Justice and Justice Huntley clearly did not think it was irrelevant. Indeed, the dissenting opinion stated that the "ultimate" rationale of *Dullenty* was not the sanctity of contractual restrictions but the ability of insurance companies to assess risks adequately and to charge premiums accordingly. *Id.* Regardless of which side was "right" in *Dullenty* and *Hansen*, the interplay between the two cases indicates that the Supreme Court as a whole is not taking a broad, doctrinal approach to issues arising under the uninsured motorist statute, I.C. § 41–2502. Rather the Court is fleshing out the meaning of the statute on a case-by-case basis, having due regard for fairness among the parties and for any long-term impact on insurance underwriting practices.

In the present case, there are no long-term underwriting implications attendant to the Loceys' claim. Their request for uninsured motorist benefits is a transitory phenomenon, created by the unique fact

---

**5.** *See* the *Hilyard, Harrison, Finch, Holt* and *Kay* decisions fully cited at n. 1, *supra.*

**32**

pattern of this case and by the limited retroactivity of the Supreme Court's decision in *Reed.* In the post-*Reed* era, claims by persons in a principal insured's household will be resolved under the liability provisions of the insurance policy, free from any "household" exclusion. No issue like the one now before us is likely to arise in a post-*Reed* case.

When the question of fairness is considered, the facts militate in favor of allowing the Loceys' claim. I acknowledge that the insurance company has paid the policy's liability limits to other claimants who were injured in the same accident as were the Locey girls. However, the Loceys' claim was not denied on that basis. Liability coverage for them was denied upon a contract exclusion found repugnant to public policy. Uninsured motorist coverage was denied for the specious reason that the vehicle was "insured," although the very policy that provided the insurance also made it inapplicable to the instant claim.

Accordingly, I would reverse the district court's judgment insofar as it holds that no uninsured motorist coverage is available to the Locey girls under the policy on their father's car. However, I would be constrained to disallow any "stacking" of uninsured motorist. benefits, based on the Supreme Court's majority opinions in *Dullenty* and *Hansen.*